UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

*Electronically filed*

| | |
|---|---|
| PLANNED PARENTHOOD GREAT NORTHWEST, HAWAII, ALASKA, INDIANA and KENTUCKY, INC., | |
| *Plaintiff* | |
| v. | Civil Action No. 3:22-cv-198-RGJ |
| DANIEL CAMERON, *et al.*, | |
| *Defendants* | |

## ATTORNEY GENERAL DANIEL CAMERON'S RESPONSE TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

House Bill 3 is a 72-page law that enacts a number of varying, much-needed regulatory reforms on abortion practices in Kentucky. A handful of those reforms require abortion providers to comply with new forms and regulations that the Cabinet for Health and Family Services must promulgate over the next couple of months. Planned Parenthood[1] challenges the law on the grounds that it cannot comply with administrative forms and regulations that the Cabinet has not yet created. It asks the Court for a temporary restraining order (and preliminary injunction) to prevent

---

[1]   The Plaintiff's full name is Planned Parenthood Great Northwest, Hawaii, Alaska, Indiana, and Kentucky.

the Attorney General and Cabinet Secretary from enforcing these requirements against Planned Parenthood—requirements that are impossible to fulfill until the Cabinet promulgates the necessary paperwork and administrative rules.

But in what can only be called sleight of hand, Planned Parenthood does not stop there. Rather than ask the Court to enjoin enforcement of a few provisions that require Planned Parenthood to submit forms that do not yet exist, Planned Parenthood asks for an injunction against *the entire law*. It argues that every single provision of HB 3 must be enjoined—not because Planned Parenthood has a valid objection to each of the reforms contained in HB 3—but because there are a handful of administrative requirements that Planned Parenthood is not able to comply with as of right now.

Planned Parenthood is wrong that HB 3 requires it to submit forms and comply with regulations before they exist. But even so, Planned Parenthood's request for an injunction against the entirety of HB 3 based on its objection to a small number of administrative requirements is wholly improper and should be rejected. Attorney General Daniel Cameron thus respectfully requests that the Court deny Planned Parenthood's motion for a temporary restraining order.

## BACKGROUND

HB 3 from Kentucky's recent legislative session enacts a number of much-needed reforms to the laws regulating abortion within the Commonwealth. All of these reforms are common sense. For example, Section 17 of HB 3 requires an in-person consultation before a doctor can provide pharmaceutical abortifacients to a

2

woman who is making "a decision so fraught with emotional consequence." *Gonzales v. Carhart*, 550 U.S. 124, 159 (2007). The law also requires abortion providers to document certain information when performing emergency abortions on minors without parental consent. 2022 HB 3, § 1(10)

The Kentucky General Assembly passed HB 3 on March 30, 2022. At the time, Planned Parenthood was well aware of the bill and its contents. A Planned Parenthood representative testified in opposition to the law on March 1 and 23, 2022.[2] And on the day HB 3 passed, Planned Parenthood issued a statement condemning the bill.[3] In doing so, Planned Parenthood outlined its opposition to many of the provisions it now challenges, including the provision requiring abortion providers to dispose of the remains of unborn children in a dignified manner. *Id.* (criticizing the law for prohibiting abortion providers from "handling fetal remains" as medical waste). Governor Beshear vetoed HB 3 nine days after the General Assembly passed it, and the General Assembly overrode the veto five days later—or about two weeks after the General Assembly first passed it. HB 3 thus became law on April 13, 2022.

Planned Parenthood challenges HB 3 on a number of fronts. But for purposes of its motion for a temporary restraining order, three parts of its challenge matter. *First*, Planned Parenthood challenges several provisions in HB 3 that require

---

[2]   Tamarra Wieder, the Kentucky State Director for Planned Parenthood Alliance Advocates, testified against HB 3 on March 1, 2022 and on March 23, 2022. Sarah Hall, a regional field organizer for Planned Parenthood Alliance Advocates, testified against HB 3 on March 23, 2022. *See* at 48:38 and 105:50, respectively: https://perma.cc/RJ95-59CY; https://perma.cc/KHM3-PZQK.

[3]   *Planned Parenthood Packs the Kentucky Capitol in Response to Senate Advancing Omnibus Abortion Bill* (Mar. 30, 2022), *available at* https://perma.cc/Y53L-3E6Z.

abortion providers to comply with forms or regulations that do not yet exist (because the Cabinet for Health and Family Services has not yet created them under the law). *Second*, Planned Parenthood challenges the provision in HB 3 that requires abortion providers to dispose of fetal remains using a licensed crematory or funeral home (or by private interment). Planned Parenthood argues that it does not have any contracts with third-party vendors to provide such services, although Planned Parenthood provides no information as to what steps it has taken to enter into such contracts. *Third*, Planned Parenthood challenges HB 3 in its entirety based on a theory that its "various interlocking provisions" act together as "[a]n operative ban on all abortion." (Doc. 3, PageID.117, 121.)

## ARGUMENT

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *see Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (applying this standard in the abortion context). In determining whether to grant injunctive relief, a court considers (1) whether the moving party is likely to succeed on the merits of the claim; (2) whether the moving party would be irreparably injured in the absence of an injunction; (3) whether others will be harmed because of an injunction; and (4) whether an injunction would serve the public interest. *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) (citation omitted); *accord Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008). The burden is on the moving party to show that the balance

of these factors weighs in its favor. *See Overstreet v. Lexington–Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). And, "[w]hen a party seeks a preliminary injunction on the basis of a potential constitutional violation, 'the likelihood of success on the merits often will be the determinative factor.'" *Schimmel*, 751 F.3d at 430 (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012)).

Planned Parenthood asserts that HB 3 violates the substantive and procedural-due-process provisions of the Fourteenth Amendment. This assertion is based on a flawed interpretation of the law and a misunderstanding of Supreme Court abortion jurisprudence. As a result, Planned Parenthood has not met its burden to show it is entitled to a temporary restraining order.

## I.   Planned Parenthood has not carried its burden to demonstrate it is likely to succeed on the merits.

In its motion for a temporary restraining order, Planned Parenthood makes three arguments as to why it is likely to succeed on the merits:[4] (1) HB 3 allegedly imposes an "operative ban" on abortions in Kentucky, (Doc. 3, PageID.121); (2) HB 3 purportedly violates Planned Parenthood's procedural-due-process rights, (*id.* at PageID.122); and (3) HB 3 allegedly violates the substantive-due-process rights of the women who seek abortions at Planned Parenthood's facility, (*id.* at PageID.121). With one exception, all three arguments boil down to the same contention: that Planned Parenthood cannot comply with HB 3 because the forms and regulations needed for

---

[4]   The other claims alleged in Planned Parenthood's complaint are not, therefore, before the Court at this stage. *See Kuhn v. Washtenaw County*, 709 F.3d 612, 624 (6th Cir. 2013) (explaining that "arguments adverted to in only a perfunctory manner" are forfeited). Attorney General Cameron limits his response to the arguments made in Planned Parenthood's motion.

compliance do not exist yet. But this argument reflects a fundamental misunderstanding of not only Supreme Court precedent, but also HB 3.

### A. HB 3 does not require Planned Parenthood to comply with forms and regulations that do not yet exist.

Planned Parenthood's main contention is that HB 3 amounts to a de facto ban on abortion. This assertion is based on a flawed interpretation of the bill.

**1.** When a federal court interprets state law, it must "follow state interpretations of [those] statutes, and must predict how the state Supreme Court would [interpret the statute] if it has not yet done so." *Bevan & Assocs., LPA, Inc. v. Yost*, 929 F.3d 366, 374 (6th Cir. 2019). As a result, federal courts also must follow state rules of statutory interpretation. *Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 998 (9th Cir. 2017); *see Bevan*, 929 F.3d at 374 (applying "the same canons of statutory interpretation that the [state] Supreme Court would apply" when conducting its analysis of the statute at issue).

In Kentucky, "[i]t is an axiomatic rule of statutory interpretation that when [a court] considers the constitutionality of a statute, [it] must draw all fair and reasonable inferences in favor of upholding the validity of the statute." *Caneyville Volunteer Fire Dep't v. Green's Motorcycle Salvage, Inc.*, 286 S.W.3d 790, 806 (Ky. 2009). Indeed, "a statute carries a presumption of constitutionality." *Am. Trucking Ass'n v. Commonwealth, Transp. Cabinet*, 676 S.W.2d 785, 789 (Ky. 1984). "To the extent that there is reasonable doubt as to a statute's constitutionality, all presumptions will be in favor of upholding the statute, deferring to the 'voice of the people as expressed through the legislative department of government.'" *Caneyville*,

6

286 S.W.3d at 806 (quoting *Walters v. Bindner*, 435 S.W.2d 464, 467 (Ky. 1968)). Therefore, courts "should reject a construction that is unreasonable and absurd, in preference for one that is reasonable, rational, sensible and intelligent." *Commonwealth v. Kash*, 967 S.W.2d 37, 44 (Ky. App. 1997) (internal quotation marks and citations omitted). Importantly, Kentucky statutes "must be read as a whole and in context with other parts of the law." *Lewis v. Jackson Energy Co-op Corp.*, 189 S.W.3d 87, 92 (Ky. 2005).

The strained construction of HB 3 proposed by Planned Parenthood should be rejected. In Planned Parenthood's view, it must abide by forms and regulations that have not even been created. What's more, Planned Parenthood reads HB 3 this way even though the law expressly gives the Cabinet for Health and Family Services (the "Cabinet") 60 days to create and distribute the relevant forms. 2022 HB 3, § 13(1). The better interpretation, and the one that accounts for HB 3 as a whole, is that Planned Parenthood will not be required to use and/or submit such forms until the Cabinet has created and distributed them. It would be unreasonable to construe the General Assembly's mandates relating to forms it directs the Cabinet to create and distribute by a date certain to apply before the Cabinet even creates such forms.

A plain reading of the individual requirements of HB 3 supports that reasonable interpretation. Section 13 of HB 3 requires the cabinet to "create and distribute the report forms required in Sections 1, 4, 8, 9, 25, 26, 27, and 29 of this Act within sixty (60) days after the effective date of this Act."[5] The provisions that

---

[5]   Planned Parenthood contends that Section 17 does not impose a 60-day timeline for creating the applicable form. (Doc. 3, PageID.115). But the form discussed in Section 17 must

require an abortion provider to use a specific form, by their text, contemplate the form existing prior to an abortion provider needing to comply. For example, Section 1 provides that a report explaining a failure to obtain the required consent "shall be filed . . . on a form supplied by the cabinet." The mandatory "shall" is dependent on the "supplied" form. If the Cabinet has not yet supplied that form, then the abortion provider need not submit it. Likewise, Section 9 requires that any physician or healthcare provider "shall make a report . . . on a report form provided by the cabinet" if he or she treats a patient for a complication from a drug-induced abortion. The mandatory nature again depends on the provision of the form. If the Cabinet has not provided the form as required by HB 3, then there is no obligation to file it. So HB 3's provisions that require the Cabinet to provide a form do not impose an obligation on Planned Parenthood until the Cabinet does so.

The same is true for the objected-to parts of HB 3 that require the Cabinet to promulgate administrative regulations. (Doc. 3, PageID.115–16.) Viewing HB 3 as a whole, the trigger for compliance with these limited aspects of HB 3 is the Cabinet in fact promulgating the required regulations. And the language of the specific provisions makes that clear too. For example, Section 15(1), requires the Cabinet to "promulgate administrative regulations to create a certification program" to regulate the dispensing of abortion-inducing drugs. And Section 15(2) specifies that those certification requirements include that the drugs may only be provided by a qualified

---

be "developed and provided by the cabinet." 2022 HB 3, § 17(3). Thus, the same conclusion holds: HB 3 does not obligate Planned Parenthood to utilize the form until the Cabinet "develop[s] and provide[s]" it.

physician registered as a nonsurgical abortion provider. There is no requirement on any abortion provider prior to the Cabinet promulgating the regulations. Thus, here as well, any compliance obligation on Planned Parenthood's part does not arise until the Cabinet follows HB 3 to promulgate the required administrative regulations.

In sum, HB 3 was carefully written to work as follows: Although the bill took effect immediately by virtue of its emergency clause, the specific provisions relating to forms and administrative regulations immediately impose a requirement *on the Cabinet* to develop the required forms on a 60-day timeline and to promulgate required administrative regulations. Once the Cabinet has created those forms in compliance with HB 3, then Planned Parenthood's obligation to utilize those forms kicks in. And once the Cabinet has promulgated the required administrative regulations, then Planned Parenthood's obligations in that regard begin.

**2.** Even if the Court disagrees with this reading of HB 3, that is no reason to enjoin HB 3 in its entirety. Rather, the Court must consider each provision of HB 3 that Planned Parenthood challenges to address only those specific requirements that Planned Parenthood claims its cannot comply with before the Cabinet promulgates the various forms and regulations needed. In other words, the fact that Planned Parenthood is not yet able to complete certain forms is not a blank check for Planned Parenthood to ignore every other provision of HB 3 that it does not like.

To that end, many of the provisions that Planned Parenthood objects to contain requirements that are independent of the various forms and regulations the Cabinet must promulgate. The following explains the specific requirements of each of those

9

sections, with an emphasis on whether each section contains *other* requirements that Planned Parenthood must still comply with even if the new forms or regulations are not yet available:

*Section 1:* Requires the filing of a report explaining a failure to obtain the required consent "on a form supplied by the cabinet." Until the Cabinet supplies the necessary form, Planned Parenthood does not have to file a report as required by Section 1(10). But that in no way prevents Planned Parenthood from complying with the other parts of Section 1. An attending physician can—and must—still obtain informed consent. *See* 2022 HB 3, § 1(2)(a). And that applies whether or not the Court agrees that the report requirement in Section 1 is not operative until the Cabinet provides the necessary form.

*Section 4:* Requires an abortion provider to report each abortion performed. Nowhere in that section is there any requirement that the abortion provider do so on a form prepared by the Cabinet. To be sure, Section 13 specifies that the Cabinet is to create a form for this purpose. But that is an independent requirement on the Cabinet, not on an abortion provider. Planned Parenthood can fully comply with Section 4's requirements by simply reporting the required information in a manner it finds expedient. Once the Cabinet creates and distributes its form, Planned Parenthood can use that form to comply with Section 4. Further, the direction in Section 4(10) for Vital Statistics to "promulgate administrative regulations . . . to assist in compliance with this section" does not prevent Planned Parenthood from complying with the reporting requirement immediately.

***Section 8(2):*** Requires a physician to use a form created by the Cabinet to obtain consent prior to providing an abortion-inducing drug. That requirement is dependent on the Cabinet's creation of the form, so it is not mandatory until the Cabinet acts.

***Section 9(1):*** Requires an abortion provider to report each abortion-inducing drug a physician provides to a patient as required by Section 26. Section 26 specifies that the report is to be made on a form provided by the Cabinet. And Section 9(3) similarly requires a report on a form provided by the Cabinet. Thus, until the Cabinet provides those forms, Section 9(1) and (3) do not impose an obligation on Planned Parenthood.

***Section 25:*** Requires hospitals, healthcare facilities, and physicians to file a written report with the Cabinet detailing any abortion complications. There is no requirement that the report be made on a form created by the Cabinet. Section 13 imposes a requirement on the Cabinet to create such a form, but Planned Parenthood can still comply with Section 25 absent that form.

***Section 26:*** Requires the report to be on a form provided by the Cabinet, so it does not impose an obligation on Planned Parenthood until the Cabinet creates and provides the form.

***Section 27(4):*** Requires a physician to submit a form provided by the Cabinet, so is not operative until the Cabinet provides the form. The rest of Section 27—which includes a restriction on performing abortions past a certain gestational age—

however, is independent of that requirement. Planned Parenthood can fully comply without the form.

***Section 29:*** Requires a report for each prescription dispensed for medicines used in conjunction with an abortion. But it does not require the report to be on a form provided by the Cabinet, and so the requirement on the Cabinet to create such a form in Section 13 does not prevent Planned Parenthood from complying with Section 29 before the creation of that form. Nor does the instruction to the Vital Statistics Branch to promulgate regulations "to assist with this section" in Section 29(7). Planned Parenthood can fully comply prior to the enactment of such regulations.

Finally, Planned Parenthood points to two other provisions that impose obligations on the Cabinet: Sections 17(1)(c) and 22(3). But the obligations are on the Cabinet, not Planned Parenthood. And Planned Parenthood is not prevented from complying with any section of the act prior to the Cabinet acting under those sections. For example, it can fully comply with Section 22's requirements for the final disposition of fetal remains before the Cabinet creates the forms under Section 22(3).

All told, even if the Court determines that HB 3 imposes compliance obligations on Planned Parenthood that it cannot meet because the Cabinet has not yet promulgated the necessary forms or regulations, the Court should restrain enforcement of only the following provisions and nothing more: Sections 1(10), 8, 9(1), 9(3), 26, and 27(4). And it should do so, at most, only for the limited period until the Cabinet creates the required form. Any other relief would be "broader than necessary

to remedy the harm at issue." *United States v. Miami Univ.*, 294 F.3d 797, 816 (6th Cir. 2002).

### B. Planned Parenthood has not demonstrated that HB 3 violates substantive due process.

The Sixth Circuit has held that "[t]he right to an abortion before viability is *not* absolute." *Preterm-Cleveland v. McCloud*, 994 F.3d 512, 520 (6th Cir. 2021) (en banc) (emphasis in original). A "'[s]tate may regulate abortion *before viability* as long as it does not impose an undue burden on a woman's right to terminate her pregnancy.'" *Id.* (emphasis in original) (quoting *Women's Med. Prof'l Corp. v. Taft*, 353 F.3d 436, 443 (6th Cir. 2003)). Under the Chief Justice's controlling opinion in *June Medical LLC v. Russo*, 140 S. Ct. 2103 (2020), a law regulating pre-viability abortions is valid if it satisfies two requirements: (1) it must be "reasonably related to a legitimate state interest," which "is met whenever a state has a rational basis to use its regulatory power," and (2) it "must not have the effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus." *EMW Women's Surgical Ctr., P.S.C. v. Friedlander*, 978 F.3d 418, 433–34 (6th Cir. 2020) (internal citations omitted) (cleaned up); *accord Bristol Reg'l Women's Ctr., P.C. v. Slatery*, 7 F.4th 478, 482–83 (6th Cir. 2021) (en banc).

Planned Parenthood argues that "regardless of any state interest asserted, a state may not constitutionally impose a pre-viability abortion ban." (Doc. 3, PageID.121.) But only one part of HB 3 prohibits some (but certainly not all) pre-viability abortions, 2022 HB 3, § 34, and Planned Parenthood does not even challenge that provision here (presumably because Planned Parenthood performs abortions

13

only until 13 weeks 6 days (Gibron Decl., Doc. 3-1, PageID.132)). The rest of HB 3 merely regulates abortion practices in Kentucky. The Kentucky General Assembly needs only "a rational basis to act" in this regard, *Gonzales*, 550 U.S. at 158, and the General Assembly included a preamble to HB 3 explaining much of its reasoning for the provisions included in the bill.[6] *See* Doc. 1-1, PageID.25–31; *see also Slatery*, 7 F.4th at 483 ("If this standard appears 'highly deferential,' that's because it is." (citation omitted)). And Planned Parenthood makes no argument that the form and administrative-regulation requirements place a substantial obstacle in a woman's path seeking an abortion other than its meritless claim that the law requires complying with forms and administrative regulations that do not exist. Because the law does not mandate such compliance, the parts of HB 3 requiring compliance with forms and regulations do not create an undue burden on the right to abortion.

### C. Nor has Planned Parenthood shown that HB 3 violates its procedural due process.

Planned Parenthood next asserts that HB 3 violates its procedural-due-process rights for two reasons. Both lack merit.

First, it argues that the law is arbitrary and unfair because it requires compliance without providing the forms needed for compliance. But HB 3 does not do that, as discussed above. Thus, it is neither arbitrary nor unfair.

---

[6] Although Planned Parenthood does not "concede" that HB 3 satisfies rational basis review, (Doc. 3, PageID.121), neither does it actually argue that HB 3 fails rational basis review. As such, Planned Parenthood is not entitled to a temporary restraining order on this theory.

Second, Planned Parenthood argues that the owners and operators of abortion facilities have a property interest in the continued operation of their facilities and that HB 3 will harm that interest. (Doc. 3, PageID.123 (citing *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006)).) Even assuming Planned Parenthood has a valid property interest that would be harmed if the bill required compliance that is currently impossible, again, HB 3 does not do that. There is no Hobson's choice. Planned Parenthood must fulfill the reporting requirements after the Cabinet creates and distributes the necessary forms, not before. Any property interest is not harmed. And even if it were, mere harm would not be enough. Planned Parenthood must show a *deprivation* of a valid property interest. *See Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002).

The Sixth Circuit has explained that in the context of an indirect injury to property's value, a deprivation exists "only 'when such indirect injuries *effectively render the property valueless*." *Id.* at 413 (citation omitted). Here, HB 3 poses—at most—only an indirect injury to Planned Parenthood's purported interest. The bill in no way shuts that business down or orders it to cease operations, as in *Women's Medical Professional Corp. v. Baird*, 438 F.3d 595, 611–12 (6th Cir. 2006), the sole case on which Planned Parenthood relies. It merely imposes some requirements on Planned Parenthood's operations. The alleged property interest is not effectively rendered valueless; it is not "*completely* destroy[ed]." *Med Corp., Inc.*, 296 F.3d at 413 (emphasis in original).

More generally, procedural due process protects individuals from a deprivation of life, liberty, or property without certain procedural protections. *See Johnson v. Morales*, 946 F.3d 911, 921 (6th Cir. 2020). That typically requires a government agency to provide a hearing before depriving an individual of their property or liberty. *Id.* But in some circumstances, a post-deprivation hearing also satisfies procedural process. *Id.* In either case, however, procedural-due-process claims depend on a state agency taking some action to deprive an individual of his rights. That has not happened here. No official or agency has ordered Planned Parenthood to cease operating its business, and there is no basis to conclude that an agency will do so without providing Planned Parenthood a hearing.

The ripeness doctrine pairs perfectly with this point. This doctrine is intended to prevent courts "from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agric. Prods Co.,* 473 U.S. 568, 580 (1985). "Ripeness becomes an issue when a case is anchored in future events that may not occur as anticipated, or at all." *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 284 (6th Cir. 1997). That is the case here. Unlike the case Planned Parenthood cites—*Women's Medical Professional Corp. v. Baird*—no official or agency of the Commonwealth has ordered Planned Parenthood to cease operations. *See Baird*, 438 F.3d at 610–11. Instead, Planned Parenthood complains that the legislation itself will make operating its business too difficult. But that is not a procedural-due-process claim.

Consider the problem in this way. With a procedural-due-process claim, the remedy is that the state agency must provide the affected individual with some sort

of procedures before (or after) enforcement. *See Johnson*, 942 F.3d at 921. What would that look like here? Is Planned Parenthood claiming that it is entitled to a due-process hearing before the General Assembly enacts the law?[7] Is Planned Parenthood asking the Court to order the Attorney General or the Cabinet Secretary to provide Planned Parenthood with a pre-enforcement hearing even before either defendant has a reason to believe an enforcement proceeding is necessary? None of that makes sense. The time to raise a procedural-due-process claim is when a state official or agency has acted to deprive Planned Parenthood of its property.

### D. Planned Parenthood has not submitted any evidence to demonstrate it has made a good-faith effort to comply with the requirements for disposing of fetal remains.

Planned Parenthood also challenges the provisions in HB 3 that require abortion providers to dispose of fetal remains in a more dignified manner than treating the remains as mere medical waste. (Doc. 3, PageID.115–16.) The Supreme Court has upheld such a law against a rational-basis challenge. *Box v. Planned Parenthood of Ind. & Ky., Inc.*, 139 S. Ct. 1780, 1781–82 (2019) (per curiam); *see also Planned Parenthood of Minn. v. Minnesota*, 910 F.2d 479, 486–88 (8th Cir. 1990) (rejecting an undue-burden challenge). Planned Parenthood claims that this part of HB 3 "obligate[s] Plaintiff to enter into one or more new contracts with a third-party vendor" because its current vendors are not able to comply with the law. Planned Parenthood is unlikely to succeed on the merits of this claim. *See Planned Parenthood of Minn.*, 910 F.2d at 487 ("While the [fetal-remains] statute admittedly touches on

---

[7] Recall that Planned Parenthood testified in opposition to this law before the General Assembly.

abortion, we cannot say it interferes with or burdens a woman's right to choose to have an abortion."). At this early juncture, however, the easiest way to reject this argument is to find that Planned Parenthood has failed to produce evidence establishing its good-faith attempt at complying with the fetal-remains law.

To prevail on a claim that an abortion regulation imposes an undue burden, plaintiffs "must make a clear showing that . . . they 'attempted in good faith' to [comply]." *EMW*, 978 F.3d at 440 (quoting *June Medical*, 140 S. Ct. at 2141) (Roberts, C.J., concurring in the judgment)). "A finding of good faith is 'necessary to ensure that the [facilities'] inability to [operate] [would be] attributable to the [challenged provisions] rather than a halfhearted attempt to" comply. *Id.* at 440–41 (quoting *June Medical*, 140 S. Ct. at 2141) (Roberts, C.J., concurring in the judgment). Thus, "good-faith efforts to comply with the law matter," and "record evidence must support a physician's assertion of futility." *Id.* at 445.

Planned Parenthood has provided *no evidence* that it has tried to comply with the fetal-remains provisions of HB 3. Planned Parenthood was aware of this possible provision as early as March 1, 2022, when Tamarra Wieder testified against HB 3, sitting alongside a representative of the ACLU who specifically criticized the bill's fetal-demise requirements. On top of that, Planned Parenthood issued public statements about the law—including its new rules for disposing of fetal remains— more than two weeks ago.  There is no evidence in the record that, since that time, Planned Parenthood has reached out to a single vendor to discuss a contract. Even though Planned Parenthood offered a declaration that discusses the disposal of what

it vaguely terms "pathological waste"—which apparently includes fetal remains—that declaration is tellingly silent on Planned Parenthood's efforts at compliance. (Gibron Decl., Doc. 3-1, PageID.130–35.) Without affirmative evidence that "clear[ly] show[s]" Planned Parenthood has made a good-faith effort at complying with the fetal-remains law, it cannot prevail on the merits of its claim. *See id.* at 440.

### E. Planned Parenthood improperly groups all provisions of HB 3 together in its request for a temporary restraining order.

According to Planned Parenthood, the "interlocking provisions" of HB 3 "effectively ban[] abortion in the Commonwealth." (Doc. 3, PageID.117.) But while applying the undue-burden test, the U.S. Supreme Court does not analyze abortion laws based on the alleged cumulative effect of various laws regulating abortion. Rather, the Supreme Court analyzes abortion provisions separately—provision by provision. For example, in *Planned Parenthood of Southeastern Pennsylvania v. Casey*, the Court evaluated the definition of "medical emergency," the informed-consent requirement, the spousal-notification requirement, the parental-consent provision, and the recordkeeping and reporting requirements separately. 505 U.S. 833, 879–901 (1992) (plurality opinion). Similarly, in *Webster v. Reproductive Health Services,* the Supreme Court assessed the four sections of the law separately. 492 U.S. 490, 505–20 (1989). This is no accident; the Supreme Court has chosen to analyze abortion provisions separately despite dissenting justices advocating for a cumulative analysis. *See Ohio v. Akron Ctr. for Reproductive Health*, 497 U.S. 502, 527 (1990) (Blackmun, J., dissenting) (complaining that "[t]he majority considers each provision in a piecemeal fashion, never acknowledging or assessing the 'degree of burden that

the entire regime of abortion regulations places' on the minor"). As the Fifth Circuit has correctly recognized, a cumulative-effects theory is "unprecedented," and "[t]he Supreme Court has not blessed such a claim." *In re Gee*, 941 F.3d 153, 172 (5th Cir. 2019) (per curiam).

Therefore, this Court should assess each provision of HB 3 separately to determine whether to grant relief as to that particular provision. The relief requested in Planned Parenthood's proposed order—that the Court enjoin HB 3 in its entirety (Doc. 3-2, PageID.137)—simply cannot be granted. For any provision that Planned Parenthood wishes to have enjoined, it must meet its burden of demonstrating *as to that provision* that it is likely to succeed on the merits of its constitutional challenge. To proceed otherwise would be to enjoin provisions for which there is no actual constitutional challenge—or for which Planned Parenthood has not met its burden. Planned Parenthood cannot be allowed to cherry-pick certain provisions or assert a cumulative impact to have *all* of HB 3 enjoined when it has not demonstrated that the balance of factors weighs in favor of injunctive relief for *all* of the provisions in HB 3.

Even still, Planned Parenthood offers no evidence or explanation as to why the interlocking features of HB 3 combine to cause an undue burden. Is it Planned Parenthood's position that all of HB 3 is unconstitutional because some provisions require it to comply with forms or regulations that do not exist? Would that still be true if the Cabinet had promulgated some of the forms but not others? And what precedent is there for finding an abortion regulation unconstitutional simply because

it requires additional paperwork? *See Slatery*, 7 F.4th at 485 (holding that "increased costs, delays, and logistical challenges" are not an undue burden). Planned Parenthood does not even try to address these basic questions. Instead, it summarily asserts that all of HB 3 operates as an effective ban on pre-viability abortion and must therefore be enjoined *in its entirety*. That argument makes no sense, and Planned Parenthood has done nothing to convince the Court otherwise.

So even if the Court is persuaded that Planned Parenthood is likely to succeed on its claim that HB 3 is unconstitutional because Planned Parenthood cannot comply before the forms and regulations are created, the Court should tailor its relief accordingly. It should restrain the Defendants from enforcing only those provisions that require Planned Parenthood to use uncreated forms or to act under uncreated regulations. And the Court should limit the duration of any such injunction only until those forms and regulations are created and distributed as required by Kentucky law.

## II.    There is no irreparable harm here.

Planned Parenthood relies on *American Civil Liberties Union of Kentucky v. McCreary County.*, 354 F.3d 438, 445 (6th Cir. 2003), for the proposition that "if it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated." But, as discussed above, Planned Parenthood has not met its burden of establishing that a constitutional right will be threatened or impaired by HB 3. Rather, Planned Parenthood's alleged concerns that prompted this lawsuit are based on a flawed interpretation of the requirements of the law.

### III.   The Commonwealth and the public will be harmed by HB 3 being enjoined.

The Commonwealth has a sovereign interest in enforcing its duly enacted laws. *See Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 142 S. Ct. 1002, 1010–11 (2022) (citing *Maine v. Taylor*, 477 U.S. 131, 137 (1986)). Therefore, "any time a State is enjoined from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *See Thompson v. DeWine*, 976 F.3d 610, 619 (6th Cir. 2020) (citation omitted). Furthermore, the inability to enforce HB 3 irretrievably harms the women and unborn children it was enacted to protect.

*     *     *

In sum, Planned Parenthood has not met its burden to demonstrate that the balance of the factors weighs in its favor. Therefore, the Court should deny Planned Parenthood's motion for a temporary restraining order.

Respectfully submitted,

Daniel Cameron
ATTORNEY GENERAL

*/s/ Christopher L. Thacker*
Victor B. Maddox
Carmine G. Iaccarino
Christopher L. Thacker
Lindsey R. Keiser
Office of the Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
Phone: (502) 696-5300
Victor.Maddox@ky.gov
Carmine.Iaccarino@ky.gov
Christopher.Thacker@ky.gov
Lindsey.Keiser@ky.gov

*Counsel for Attorney General Cameron*

## CERTIFICATE OF SERVICE

I certify that on April 19, 2022, the above document was filed with the CM/ECF filing system, which electronically served a copy to all counsel of record.

*/s/ Christopher L. Thacker*
*Counsel for Attorney General Cameron*