UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| PLANNED PARENTHOOD GREAT NORTHWEST, HAWAII, ALASKA, INDIANA, AND KENTUCKY, INC., ON BEHALF OF ITSELF, ITS STAFF, AND ITS PATIENTS, | Plaintiff |
| -and- | |
| EMW WOMEN'S SURGICAL CENTER, P.S.C., ON BEHALF OF ITSELF, ITS STAFF, AND ITS PATIENTS; ERNEST W. MARSHALL, M.D., ON BEHALF OF HIMSELF AND HIS PATIENTS, | Intervenor Plaintiffs |
| v. | Civil Action No. 3:22-cv-198-RGJ |
| DANIEL CAMERON, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE COMMONWEALTH OF KENTUCKY; ERIC FRIEDLANDER, IN HIS OFFICIAL CAPACITY AS SECRETARY OF KENTUCKY'S CABINET FOR HEALTH AND FAMILY SERVICES; MICHAEL S. RODMAN, IN HIS OFFICIAL CAPACITY AS EXCECUTIVE DIRECTOR OF THE KENTUCKY BOARD OF MEDICAL LICENSURE; AND THOMAS B. WINE, IN HIS OFFICIAL CAPACITY AS COMMONWEALTH'S ATTORNEY FOR THE 30TH JUDICIAL CIRCUIT OF KENTUCKY | Defendants |

\* \* \* \* \*

## **MEMORANDUM OPINION & ORDER**

Defendant Attorney General Daniel Cameron ("Attorney General") moves the Court to stay its May 19, 2022, Memorandum Opinion and Preliminary Injunction [DE 65] ("Preliminary Injunction") pending appeal.[1] For the reasons below, the Attorney General's Emergency Motion for Stay Pending Appeal ("Motion") [DE 67] is **DENIED**.

---

[1] No response was necessary because of the urgency of the Attorney General's motion and because the ruling does not prejudice Plaintiffs as the Attorney General was unable to meet his burden for a stay.

## I.   PROCEDURAL BACKGROUND[2]

On March 29, 2022, the Kentucky Legislature passed House Bill 3, the Humanity in Healthcare Act of 2022 ("HB 3"). [DE 3 at 110]. HB 3 revises Kentucky's existing abortion regulations to create new requirements, including a new regulatory regime for abortion-inducing medication, new reporting, new informed consent requirements, new registration requirements, and new requirements for disposition of fetal remains. *Id.* HB 3 also bans abortions after 15 weeks. *Id.* §§ 27(2), 34.  Penalties for violating HB 3 include a Class D felony, fines of up to $1 million, and revocation of physician and facility licenses. *Id.* § 28(6). HB 3 directs Kentucky's Cabinet for Health and Family Services ("Cabinet") to promulgate regulations, forms, and programs for compliance with the law's mandates within 60 days of the effective date. *Id.* § 13(1).

On April 8, Governor Andy Beshear vetoed HB 3.  [DE 3 at 113].  On April 13, the Kentucky Legislature voted to override Governor Beshear's veto.  [DE 1 at 3]. HB 3 contains an emergency clause, causing it to become effective April 13, 2022.  HB 3, § 39.

The next day, on Thursday, April 14, Planned Parenthood Great Northwest, Hawaii, Alaska, Indiana, and Kentucky, Inc., ("Planned Parenthood") filed its Complaint, asserting four claims[3] and seeking emergency relief. [DE 1, DE 3]. Simultaneous with its Complaint, Planned Parenthood filed a Motion for Temporary Restraining Order and Preliminary Injunction [DE 3].

---

[2] Based on the procedural nature of the Attorney General's arguments, a detailed procedural background is provided and the factual background of the Preliminary Injunction [DE 65] is incorporated by reference.

[3] The Complaint alleges HB 3 violates: (1) procedural due process on its behalf, "[b]y taking effect immediately, without providing Plaintiff and other abortion providers time to comply, and by subjecting Plaintiff to HB 3's penalties when the Cabinet has not yet created the forms that Plaintiff is required to use, or promulgate the required regulations," (2) substantive due process on its behalf, "[b]y requiring plaintiff to comply . . . despite compliance being impossible - . . . prevent[ing] Plaintiff from providing abortions and operating its business . . . ," (3) substantive due process on its patients' behalf in violation of patient's rights to liberty and privacy by taking "effect immediately, and making compliance impossible by requiring Plaintiff to use agency forms and processes not yet available," and (4) substantive due process on its patients' behalf in violation of Plaintiff's patients' rights to informational privacy.  [DE 1 at 21–23].

This motion put forth the declaration of Rebecca Gibron ("Gibron Declaration") that absent injunctive relief, Planned Parenthood would cease providing abortion services as providers could not risk the penalties of non-compliance with HB 3, and that it had services scheduled for April 22 that would need to be cancelled as a result. [DE 3-1, Gibron Decl. at 133–34]. Also on April 14, Planned Parenthood moved the Court to reassign the case, asserting that it is "nearly identical with a related case," *EMW Women's Surgical Center, P.S.C., et al. v. Eric Friedlander, et al.*, Case No. 3:19-cv-00178-DJH-RSE ("EMW Case") already pending in this district. [DE 6 at 149].

On April 15, the Court denied Planned Parenthood's motion to reassign, holding the cases were not "nearly identical" and the interests of justice did not support reassignment. [DE 12]. On that same date the Court entered an order notifying Defendants that the motion for temporary restraining order required an expeditious ruling, and thus, any response needed to be filed by noon on April 19. [DE 13].

On April 19, the Attorney General responded to Planned Parenthood's motion for temporary restraining order.[4] [DE 21]. Also on April 19, Planned Parenthood replied. [DE 22].

On April 21, the Court issued a Memorandum Opinion & Temporary Restraining Order ("TRO") restraining Defendants from enforcing HB 3 for a period not to exceed 14 days from the date of entry as required by Federal Rule of Civil Procedure ("FRCP") 65(b)(2).[5] [DE 27].

On April 25, EMW Women's Surgical Center and Dr. Ernest W. Marshall ("EMW" and together with Planned Parenthood, "Plaintiffs") moved to intervene and for clarification of the

---

[4] Defendants, Eric Friedlander, in his official capacity as Secretary of Kentucky's Cabinet for Health and Family Services, Michael S. Rodman, in his official capacity as Executive Director of the Kentucky Board of Medical Licensure, and Thomas B. Wine, in his official capacity as Commonwealth's Attorney for the 30th Judicial Circuit of Kentucky, did not respond in writing to any of Plaintiffs' briefs.

[5] Under Federal Rule of Civil Procedure ("FRCP") 65(b)(2), a TRO can remain in effect for a time "not to exceed 14 days" unless extended for good cause for a like period. Thus, the TRO was in place until Thursday, May 4, absent a request for extension or agreement otherwise by the parties.

Court's TRO. [DE 28].  EMW is the only other abortion provider in Kentucky besides Planned Parenthood, but unlike Planned Parenthood, EMW does provide abortions after 15 weeks.  [DE 28 at 263].

On April 26, the Court granted EMW's motion to intervene as it was made less than two weeks after this action began and the day after EMW's motion to supplement its complaint with a challenge to HB 3's 15-week ban in the EMW Case was denied.  [DE 32].  The Court denied EMW's motion for clarification as moot, reiterating that HB 3 was enjoined in its entirety. *Id.*

Also on April 26, the Court ordered the preliminary injunction hearing be set for Monday, May 2 at 10:00 a.m. [DE 30]. The Court made clear in its text order that "[f]or the preliminary injunction hearing, the Court expects both sides to explain in detail and designate by section and line the provisions of House Bill 3 they believe can and cannot be complied with before the rules are promulgated and the forms are created by the Cabinet. The parties will also be required to submit proposed findings of fact and conclusions of law after the hearing."  [*Id.*].

On April 28, EMW filed a Motion for Preliminary Injunction to enjoin HB 3. [DE 38].

On April 29, the Attorney General responded to Planned Parenthood's motion for temporary restraining order [DE 39] and attached a color-coded exhibit chart asserting which of HB 3's provisions the Attorney General believed were capable of compliance.  [DE 39-1].

On May 1, the Attorney General filed a response to EMW's motion for preliminary injunction [DE 41] and attached the declaration of Robin Pierucci ("Pierucci Declaration") discussing whether fetuses are pain-capable at 15 weeks. [DE 41-1].  On that same day, Planned Parenthood replied in support of its motion for temporary restraining order [DE 42], attaching as an exhibit a duplicate of the Attorney General's color-coded chart with an additional column that included Planned Parenthood's response to whether compliance with each provision of HB 3 was

possible [DE 42-1].  Also attached to the reply were a copy of the existing abortion reporting form [DE 42-2], a copy of the existing abortion prescription reporting form [DE 42-3], and a copy of the existing cremation authorization form [DE 42-4].

On May 2, EMW replied in support of its motion for preliminary injunction. [DE 43].

The same day, the Court held a three-and-a-half-hour hearing on Plaintiffs' motions for preliminary injunctions.  [DE 51].

Based on the issues raised and discussions at the hearing, the Court requested the parties to submit proposed findings of fact and conclusions of law including affidavits supporting any facts relevant to their positions.  [DE 51, Hrg. Tr. at 657–58].  The Court allowed for staggered responsive pleadings so that the Attorney General could review Plaintiffs' submissions of facts and affidavits and have an opportunity to contest any facts or affidavits submitted. [*Id*. at 788–90]. On May 3, the Court entered an order setting forth what was discussed at the hearing and ordering that (1) the official transcript of the hearing be filed by noon on May 4, (2) Plaintiffs submit their briefs by Friday, May 6, (3) Defendants respond by Thursday, May 12, and (4) Plaintiffs file any reply by Monday, May 16.  [DE 48].

On May 4, for good cause shown and in order to consider the impending briefing, the Court extended and modified the TRO for another 14 days, to expire May 19. [6]  [DE 49]. Also that same date, at the Court's request, the Cabinet for Health and Family Services ("Cabinet") filed a status report stating the Cabinet's position on the promulgation of forms and programs required under HB 3.  [DE 53].

On Friday, May 6, Plaintiffs filed their findings of fact and conclusions of law [DE 54] and three corresponding sworn declarations: the Miller Declaration [DE 55], the Marshall Declaration

---

[6] The Court modified its TRO to reflect the parties' agreement regarding provisions of HB 3 for which compliance was possible.  [DE 42-1].

[DE 56], and the Lemasters Declaration [DE 57; DE 62] setting forth facts supporting their positions on compliance.

On Thursday, May 12, the Attorney General responded [DE 63], and attached a separate findings of fact and conclusions of law [DE 63-1], as well as several articles, Hospital Miscarriage Ceremonies [DE 63-2], Hospital Deceased Infants [DE 62-3], Archdiocese of Louisville Cemeteries [63-4], Calvary Cemetery, Lexington [63-5], and Paducah cemetery for unborn children set to expand [63-6]. Other than the Perucci Declaration submitted earlier in the record, the Attorney General did not submit any declarations or affidavits.

On May 16, the Plaintiffs submitted their reply in support of their proposed findings of fact and conclusions of law. [DE 63].  Plaintiffs' reply did not contain any new facts or affidavits. *Id.*

On Thursday May 19, as the temporary restraining order was set to expire, the Court issued its Preliminary Injunction [DE 65] enjoining Defendants from enforcing or otherwise requiring compliance with the specific provisions[7] of HB 3 until the Cabinet creates a means for compliance. [DE 65 at 1289–90]. The Court also enjoined the Defendants from enforcing Sections 27, 33(2), (4), and (6), and 34 and stayed any related litigation on these sections pending the Supreme Court's decision in *Dobbs v. Jackson Women's Health,* 945 F.3d 265 (5th Cir. 2019). [*Id.*]  That same day, the Attorney General filed a notice of his appeal to the United States Court of Appeals for the Sixth Circuit of the Court's Preliminary Injunction. [DE 66].

On May 20, the Attorney General filed this Motion asking the Court to stay the Preliminary Injunction pending the resolution of the merits of his appeal.  [DE 67].

---

[7]  a.    Sections 1(2) and (9)–(11), 4(2)–(5), 6(1), 8, 9, 15, 16(2)–(3), 17, 20(2)–(3), 21(3)–(4), 22, 23(15), 25, 26, 29(1)–(4);
   b.    Sections 13, 16(1), 18(1), 19 only to the extent they may be enforced against Plaintiffs; and
   c.    Sections 2(27), 3(12) and (39), 4(8), 11, 18(2), 28(6), 29(5)–(6), 31, 35 only to the extent the Court also temporarily restrains the underlying law.

## II.    STANDARD

Federal Rule of Civil Procedure 62(d) grants district courts power to stay an injunction pending appeal: "While an appeal is pending from an interlocutory order or final judgment that grants . . . an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." *See also* Fed. R. App. P. 8(a)(1)(C) ("A party must ordinarily move first in the district court for . . . an order suspending [or] modifying . . . an injunction while an appeal is pending.").

In determining whether to issue a stay under Rule 62(d), courts consider: "(1) the likelihood that the party seeking the stay will prevail on the merits; (2) the likelihood that the moving party will be irreparably harmed; (3) the prospect that others will be harmed by the stay; and (4) the public interest in the stay." *Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016) (citing *Coal. to Def. Affirmative Action v. Granholm*, 473 F.3d 237, 244 (6th Cir. 2006)). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). Where "the state is the moving party, its own potential harm and the public's interest merge into a single factor." *SawariMedia, LLC v. Whitmer*, 963 F.3d 595, 596 (6th Cir. 2020) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). As the moving party, the Attorney General carries "the burden of showing it is entitled to a stay." *DV Diamond Club of Flint, LLC v. SBA*, 960 F.3d 743, 746 (6th Cir. 2020).

"A motion for a stay pending appeal is generally made after the district court has considered fully the merits of the underlying action . . . [a]s a result, a movant seeking a stay pending review on the merits of a district court's judgment will have greater difficulty in demonstrating a

likelihood of success on the merits."[8] *Id*. A party must, in essence, demonstrate "a likelihood of reversal." *Id*. Yet, "a movant need not always establish a high probability of success on the merits." *Id*. Rather, "[t]he strength of the likelihood of success on the merits that needs to be demonstrated is inversely proportional to the amount of irreparable harm that will be suffered if a stay does not issue." *Baker v. Adams Cty./Ohio Valley Sch. Bd*., 310 F.3d 927, 928 (6th Cir. 2002). But the moving party is "always required to demonstrate more than the mere 'possibility' of success on the merits." *Griepentrog*, 945 F.2d at 153. Even if, for example, the moving party establishes that irreparable harm "decidedly outweighs any potential harm to the defendant if a stay is granted, he is still required to show, at a minimum, 'serious questions going to the merits.'" *Id.* (quoting *In re DeLorean Motor Co*., 755 F.2d 1223, 1228 (6th Cir. 1985)).

"In evaluating the harm which will occur both if the stay is issued and if it is not, we look to three factors: (1) the substantiality of the injury alleged, (2) the likelihood of its occurrence, and (3) the adequacy of the proof provided." *Ohio ex rel. Celebrezze v. Nuclear Regul. Comm'n,* 812 F.2d 288, 290 (6th Cir.1987). When evaluating the four factors, "the movant must address each factor, regardless of its relative strength, providing specific facts and affidavits supporting assertions that these factors exist." *Griepentrog*, 945 F.2d at 154. The movant must provide evidence from which the Court can make specific findings of fact. *Ohio ex rel. Celebrezze*, 812 F.2d at 290. "Because the burden of meeting this standard is a heavy one, more commonly stay requests will not meet this standard and will be denied." *D.A.B.E., Inc. v. City of Toledo*, No. 3:03CV7637, 2004 WL 287415, at *2 (N.D. Ohio 2004) (quoting 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* § 2904 at 503–05 (1995)).

---

[8] Notably, this case is only at the preliminary injunction phase and not after the Court has "fully considered the merits of the underlying action."

### III.   ANALYSIS

#### a.   Likelihood of Success on the Merits

The Attorney General's motion levies several general complaints about the Court's Preliminary Injunction (and temporary restraining order) but fails to provide specific examples, facts, and analysis. This alone would be a sufficient basis to deny the motion, *Griepentrog*, 945 F.2d at 154; nonetheless, the Court has endeavored to address the Attorney General's conclusory arguments.

##### i.   Fair Opportunity to Respond and Alleged "Procedural Irregularities"

First, the Attorney General argues that the Court "entered its preliminary injunction without providing Attorney General Cameron a fair opportunity to respond to Plaintiffs' claims." Moreover, the Attorney General alleges that the Court committed "procedural irregularities" that led to the wrongful issuance of a preliminary injunction; however, the Attorney General identifies no specific "irregularity." [DE 67 at 1294–95; *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regul. Comm'n,* 59 F.3d 284, 293–94 (1st Cir. 1995)) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.")].

A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it. *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) citing *Leary v. Daeschner,* 228 F.3d 729, 739 (6th Cir. 2000) (citations omitted).  "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). "Given this limited purpose, and given the haste that is often necessary if those positions are to be

preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Id.* "A party thus is not required to prove his case in full at a preliminary-injunction hearing, and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Id.* (internal citation omitted). Under FRCP 65(d), every order granting an injunction must (1) state the reasons why it issued, (2) state its terms specifically, and (3) describe in reasonable detail, and not by referring to the complaint or other document, the act or acts restrained.[9]

The Court recognizes that a preliminary injunction is an extraordinary remedy and does not take this standard lightly. The Court followed correct procedures for deciding whether to grant a temporary restraining order and then preliminary injunction under FRCP 65 and gave the Attorney General *multiple* opportunities to respond. This is demonstrated by the timeline of events set forth above from the filing of Planned Parenthood's Complaint to the Court's eventual issuance of the preliminary injunction, as well as the proof filed in the record by the parties, and the details set forth in the Court's order issuing the temporary restraining order [DE 27], order extending the temporary restraining order [DE 49], and order issuing the Preliminary Injunction [DE 65], all of which complied with the requirements of FRCP 65(d). The Court acted with speed given the constitutional rights at issue, while following the normal procedures for considering whether to grant a motion for injunctive relief. At no point was any fact, affidavit, or argument received into the record or considered by the Court without the Attorney General having an opportunity to

---

[9] The Court notes that it did not consolidate the preliminary injunction hearing with the trial on the merits under FRCP 65(a)(2).

10

respond in writing. Nor has the Attorney General identified any specific fact, affidavit, or argument received into the record that he did not have the opportunity to address or contest.[10]

In responding to the motion for temporary restraining order filed by Planned Parenthood, the Attorney General all but admitted that Plaintiff could not comply with the requirements of HB 3 because the requisite forms were not prepared, and programs were not in place. [DE 21 at 200 ("[i]f the Cabinet has not provided the form as required by HB 3, then there is no obligation to file it. So HB 3's provisions that require the Cabinet to provide a form do not impose an obligation on Planned Parenthood until the Cabinet does so . . . [t]he same is true for the objected-to parts of HB 3 that require the Cabinet to promulgate administrative regulations . . . [t]here is no requirement on any abortion provider prior to the Cabinet promulgating the regulations . . .")]. Despite recognizing that HB 3 created requirements for which there was no means to comply, the Attorney General argued that Plaintiffs could still comply with various provisions.  The Court disagreed with this argument [DE 27 at 256] but made clear in its order scheduling the preliminary injunction hearing that "[f]or the preliminary injunction hearing, the Court expects both sides to explain in detail and designate by section and line the provisions of House Bill 3 they believe can and cannot be complied with before the rules are promulgated and the forms are created by the Cabinet."  [DE 30, April 26, 2022 Order].  The parties were thus on notice about the information requested at the hearing.

---

[10] Sixth Circuit precedent is clear that "an argument not raised before the district court is waived on appeal." *Johnson v. Ford Motor Co.,* 13 F.4th 493, 503–04 (6th Cir. 2021)(quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008)); *Frazier v. Jenkins*, 770 F.3d 485, 497 (6th Cir. 2014) ("Generally, we will not address arguments raised for the first time on appeal."). To the extent this Motion is being used to raise new issues not before the Court in any of the prior extensive briefings or reconsider the Courts ruling, those arguments are also waived on appeal. *Evanston Ins. Co. v. Cogswell Props., LLC*, 683 F.3d 684, 692 (6th Cir. 2012); ("[a]rguments raised for the first time in a motion for reconsideration are untimely and forfeited on appeal," because a "motion for reconsideration may not be used to raise issues that could have been raised in the previous motion." (internal quotation marks and citation omitted)); *Morgan v. Fed. Bureau of Alcohol, Tobacco & Firearms*, 509 F.3d 273, 277 (6th Cir. 2007).

At the start of the preliminary injunction hearing, the Court advised the parties "that I will have you do any findings of fact and conclusions of law and do another submission before the PI, so it wasn't your last chance to be heard on paper, certainly." [DE 51, Hrg. Tr. at 657]. The parties stated that they had "conferred ahead of time and [ ] think that everything that should be discussed today is of a legal nature so we're not anticipating calling a witness. There is a declaration already in the record before you with respect to any facts that you may find. Of course, we're always happy to supplement." [*Id*. at 658–59]. Thus, the parties recognized the issues were largely legal, and for the next several hours the Plaintiffs walked section by section through HB 3 detailing the reasons they could or could not comply with the individual sections. [*Id*.].

At the conclusion of the preliminary injunction hearing the Court discussed with the parties a post-hearing briefing schedule agreed to by the parties, mindful of the fact that the Court's temporary restraining order would expire several days later and any extension of that order could last no more than an additional 14 days. [DE 51, Hrg. Tr. at 788–90]. The Court also made clear it expected the Cabinet to file report as to its ability to comply with HB 3. [*Id*. at 791].

Counsel for the Attorney General conceded that not all the facts may be in the record as to the issues of this case, stating that:

> the 15-week ban issue potentially raises factual questions. And we submitted a declaration late last evening. We would reserve the opportunity -- or would seek the opportunity to perhaps further supplement the factual record. Perhaps that can be done in connection with whatever filing the court wants after today's hearing in terms of findings of fact and conclusions of law but certainly no witnesses today. And I think the determination of whether a separate hearing will be needed on the facts can be made after all filings are closed and the court looks at any declaration or proffers of evidence that are made.

[*Id*. at 659]. The Court gave the Attorney General  time to provide such additional facts in its findings of fact and conclusions of law, and the chance to request to be heard again in an evidentiary hearing.  But the Attorney General did not submit any sworn declarations or expert

testimonies with his findings of fact and conclusions of law, and he did not ask for another opportunity to he heard despite reserving that right. [DE 63]. Instead, he submitted five articles published by local newspapers and Catholic Dioceses in Kentucky.  [DE 63-2; DE 63-3; DE 63-4; DE 63-5; DE 63-6].  These articles all relate to interment services provided for miscarried infants.  There is no indication that any of these articles were published after the Kentucky Legislature passed HB 3, thus the articles fail to address whether these entities can provide these same services after the passage of HB 3 in accordance with its requirements.

The only declaration in the record from the Attorney General was the Pierucci Declaration [DE 41-1], which addressed the issue of fetal pain at and potentially before 15 weeks gestation. [DE 41-1 at 570–71].  While this proof goes to the issue of the state's legitimate interest in passing HB 3, the Court did not need to reach the issue of whether the interests identified by the state in passing HB 3 were reasonably related to a legitimate state interest because the Plaintiffs,[11] in particular EMW, demonstrated that the provisions of HB 3 prohibiting abortion after 15 weeks "has the effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus," *Preterm-Cleveland v. McCloud,* 994 F.3d 512, 520 (6th Cir. 2021), and thus it is likely to succeed on the merits of its claim that the 15-week ban violates EMW's patients' substantive due process rights under the Fourteenth Amendment. [DE 65 at 1287].  The Attorney General did not provide any facts or arguments regarding whether 15-weeks was previability or whether HB 3 constituted a substantial obstacle.

In short, the Court did not deviate from the ordinary procedures of deciding a motion for injunctive relief and provided the Attorney General with *multiple* opportunities to respond to facts

---

[11] Indeed, the standard is highly deferential in determining whether a state's interest in passing abortion legislation is reasonably related to a legitimate state interest. *Bristol Reg'l Women's Ctr., P.C. v. Slatery*, 7 F.4th 478, 483 (6th Cir. 2021).

and arguments put into the record by the Plaintiffs.[12]  The Attorney General is not likely to succeed on his claim that this Court denied him a fair opportunity to respond and entered the Preliminary Injunction as a result of unidentified "procedural irregularities."

ii.  Alleged Burden-Shifting

Second, the Attorney General argues that the Court improperly shifted that burden from Plaintiffs to the Attorney General.[13] In determining whether to first grant a temporary restraining order, the Court carefully the considered the information and proof put forth by Planned Parenthood, including, but not limited to, the plain language of HB 3 and the Gibron Declaration that absent injunctive relief,  Planned Parenthood would cease providing abortion as its providers could not risk non-compliance with HB 3, and that it had abortions scheduled for April 22 that would have to be canceled. [DE 3-1, Gibron Decl. at 133–34]. Ultimately the Court determined that Planned Parenthood met its burden, demonstrated that the language of HB 3 could not be complied with, and enjoined the entire law which maintained the status quo for the parties until more information could be garnered. [DE 27, April 21, 2022 Order].   The Court immediately scheduled a preliminary injunction hearing with the parties for the purpose of further evaluating the scope of a potential preliminary injunction.

At the preliminary injunction hearing, the Plaintiffs walked section by section through HB 3 detailing the reasons that they could or could not comply with individual sections. [DE 51].

---

[12] The Attorney General also had an opportunity to respond to the Notice filed by the Cabinet, but chose not to, arguing that the Cabinet's filing was not "at issue" in the case and declining to address it.

[13] The Attorney General confuses its argument that the Court shifted the burden from the Plaintiff and denied the Attorney General a fair opportunity to respond.  The Plaintiffs put facts and arguments into the record.  The Court found Plaintiffs' affidavits and arguments sufficient to meet their burden from a factual and legal standpoint. While the Court provided the Attorney General with several opportunities to respond to those facts and arguments, the Attorney General did not challenge any of the facts asserted or provide any contradictory facts or affidavits.  The Court then granted injunctive relief.  [DE 65]. Because there were instances in which the Attorney General did not respond or persuasively refute facts and arguments of the Plaintiffs does not mean that the Court shifted the burden.

The Attorney General participated in that hearing, advancing two main propositions that Plaintiffs have failed to carry their burden because (1) there is no obligation to comply until programs are established and forms are made by the Cabinet and thus there is no need for an injunction as to the sections specifically mentioning a form [DE 51, Hrg. Tr. at 667 ("I want to begin by making it very clear that it is the burden of the plaintiffs here to show that they cannot conform.")] and (2) all the other reporting requirements can be sent to the Cabinet in any manner the Plaintiffs think is expeditious [*id*. at 692 ("Again, to the extent the statute doesn't tell you how to do it so long as you report this information to the Cabinet.")].

Based on the issues raised at the hearing on May 2, the Court asked the parties to submit findings of fact and conclusions of law.  At this point, Plaintiffs had already provided two declarations. Planned Parenthood tendered a sworn declaration from Rebecca Gibron [DE 3-1] as part of its Motion for a Temporary Restraining Order and Preliminary Injunction.  The Gibron Declaration described Planned Parenthood's services and current practices.  [DE 3-1].  It also explained why Planned Parenthood could not comply with HB 3 until the Cabinet created forms and promulgated regulations.  [*Id.*].  Plaintiffs also filed the Declaration of Michael Abate [DE 22-1] as an exhibit to their Reply in Support of a Temporary Restraining Order [DE 22]. The Abate Declaration included email correspondence between Plaintiffs and counsel in the Attorney General's office regarding enforcement of HB 3. [DE 22-1]. Plaintiffs asked the Attorney General to agree not to enforce HB 3 until the "forms and programs contemplated by the statute are create." [*Id*. at 225]. The Attorney General ceased communication after asking Plaintiffs to clarify their request. [*Id*. at 226].

In response to the Court's request for findings of fact and conclusions of law, Plaintiffs submitted three sworn declarations. [DE 55; DE 56; DE 57; DE 62].[14]  The Miller Declaration was prepared by the Area Service Director for Planned Parenthood who has responsibility for overseeing operations at the Louisville location.  [DE 55].  The Miller Declaration goes section by section through HB 3 and discusses Planned Parenthood's current practices, how current practices would have to change to comply with HB 3, and whether compliance is possible without additional guidance from the Cabinet.  [*Id.*].  The Marshall Declaration was prepared by the owner and medical director of EMW.  [DE 56].  The Marshall Declaration explains that EMW's internal procedures are substantially similar to Planned Parenthood's and, like Planned Parenthood, will be unable to provide abortion services without forms and guidance from the Cabinet.  [*Id.*].  The Lemasters Declaration was prepared by an expert on deathcare topics under Kentucky law, including funeral and cremation issues.  [DE 62 at 1119].  The Lemasters Declaration discusses current cremation and interment practices in Kentucky and explains how these practices will be altered by HB 3.  [*Id.*].  It also explains why compliance with HB 3 is likely impossible for Plaintiffs and crematories or funeral directors until the Cabinet has created forms and promulgated regulations providing additional guidance.  [*Id.*].

Attorney General Cameron only provided the sworn Pierucci Declaration [DE 41-1] as part of his response to EMW's Motion for a Preliminary Injunction.  The Pierucci Declaration discusses fetal pain, but it does not refute Plaintiffs' inability to comply with HB 3, discuss the Cabinet's responsibilities, or discuss the issue of viability (as opposed to pain-capable) at 15 weeks.  [*Id.*].  Only the final sentence of the Pierucci Declaration vaguely references HB 3, which states,

---

[14] Plaintiffs inadvertently listed the incorrect case number on DE 57 and refiled the same declaration with a corrected case number as DE 62.  To avoid confusion, the Court will only cite DE 62.

16

"[l]egislation that notes fetal pain exists at 15 weeks gestation is consistent with updated medical and scientific literature."  [*Id.* at 584].

If the Attorney General chose not to refute facts and arguments put forth by the Plaintiffs or the Court disagreed with the Attorney General's arguments, that does not mean that the Court shifted the burden to the Attorney General.  For instance, on the issue of the 15-week ban, the Attorney General represented at the preliminary injunction hearing that the 15-week ban issue "potentially raises factual questions" and reserved the opportunity to supplement the factual record.   But the Attorney General chose not to supplement the record after the hearing.  And as stated in the Court's Preliminary Injunction [DE 65 at 1287], there is clearly established Supreme Court precedent that this Court must follow on this issue.  The Court found that the 15-week ban constitutes a substantial obstacle to women seeking a pre-viability abortion. [DE 65 at 1287–88]. The Attorney General did not provide a basis for this Court to substantially distinguish that precedent and find that the 15-week ban did present a substantial obstacle to pre-viability abortion. The only declaration submitted by the Attorney General, the Petrucci Declaration [DE 41-1], does not refute whether HB 3 is a substantial obstacle, instead it addresses "government interest," an issue which the Court did not need to reach in its analysis.  [*Id.*].  As a result, the Court did not shift the burden to the Attorney General.

On the issue of fetal death remains, Section 22(2)(c) requires the parent or parent of fetal remains to "[r]elinquish the guardianship of the fetal remains and the responsibility for final disposition of those remains to the guardianship of the healthcare facility or abortion clinic" (HB 3 § 22(2)(c)(1)) or "[r]etain the guardianship for the fetal remains . . . ." (*id.* § 22(2)(c)(2)).  The Miller Declaration explains that there is not a form or process for Plaintiffs to take legal guardianship of pregnancy tissue.  [DE 55 at 1043].  Plaintiffs also argue that not only does a form

not exist but taking legal guardianship of pregnancy tissue is legally impossible.  [DE 54 at 858].  The Attorney General did not respond to this argument.  [DE 63].  Despite the Attorney General explicitly acknowledging the problems that arise for Plaintiffs if the parents choose to relinquish guardianship [DE 51, Hrg. Tr. 757 ("I think it's significant that the statute speaks in terms of guardianship. I think if–so the problem for plaintiffs only arises if the patient chooses option one; relinquish guardianship to the plaintiffs.")], he did not address this issue in his findings of fact and conclusions of law or any related briefing or affidavit.  [DE 63; 63-1].  Again, the burden was not shifted.  Plaintiffs met their burden.  If the Attorney General believed, as he stated, that Plaintiffs failed to meet their burden as to disposal of fetal remains, then the Court provided him an opportunity to identify competing legal and factual arguments as to why the Plaintiffs proof and arguments were insufficient.  Again the Attorney General did not avail himself of that opportunity and thus has waived these arguments on appeal.  *Johnson,* 13 F.4th at 503–04 (6th Cir. 2021) (quoting *Scottsdale Ins. Co.*, 513 F.3d at 552 and stating, "an argument not raised before the district court is waived on appeal.").  The burden was not shifted.

On the issue of government-issued IDs, Section 1(2)(a)(2)(a) requires Plaintiffs to secure a copy of a patient's "government-issued identification" to satisfy the written consent requirements.  HB 3 does not define "government-issued identification" or explain the procedures for obtaining an abortion when a patient does not have a "government-issued identification."  The Miller Declaration explained that Plaintiffs cannot determine what counts as a "government-issued identification" under Section 1 without further guidance from the Cabinet.  [DE 54 at 812–13; DE 55 at 1050].  It also noted that most minors who visit the clinics do not have a driver's license or any other form of identification issued by the state.  [DE 54 at 813; DE 55 at 1050].  In response, the Attorney General argues in a single sentence that "any argument as to the ID requirement is

forfeited because it was not made in the preliminary-injunction motion."[15] [DE 63 at 1152]. Although questions related to government-issued identification requirements were discussed at the May 2 hearing [DE 51, Hrg. Tr. at 676–79], in the Miller Declaration [DE 55 at 1050], and in Plaintiffs' findings of fact and conclusions of law [DE 54 at 812–13] the Attorney General failed to substantively address this issue. Again, that the Attorney General chose not to refute anything put forth on this issue does not mean that the Court failed to give the Attorney General the opportunity to respond or shifted the burden.

In short, as set forth above in the sworn declarations submitted by the parties [DE 3-1; DE 41-1; DE 55; DE 56; DE 62] and in the Court's Preliminary Injunction [DE 65], there were substantial facts and arguments in the record on which the Court found that Plaintiffs had met their burden and granted the Plaintiffs' preliminary injunction. [DE 65 at 1260–70, 79–80]. The Court went through virtually every section of HB 3 and made a finding as to whether the Plaintiffs could comply or whether the provision was constitutional based on the numerous affidavits provided. [*Id.*] If the Attorney General chose not to refute these facts and arguments, or failed to persuade the Court otherwise, that does not mean that the Court shifted the burden to the Attorney General.

### iii.   Other Arguments of Alleged "Legal Errors"

The Attorney General also claims that the Court "made other legal errors in issuing its preliminary injunction." [DE 67 at 1297–98]. The Attorney General argues that the Court "failed to properly apply the Sixth Circuit's good-faith standard for challenging laws regulating abortion." [DE 67 at 1297 (citing *EMW Women's Surgical Ctr., P.S.C. v. Friedlander* ("*EMW II*")[16]]. However, this argument is logically inconsistent. In *EMW II*, the Cabinet had created a waiver

---

[15] These arguments were not forfeited as a matter of law [DE 65 at 1257–58].

[16] This was case referenced as "*EMW II*" in the Court's Preliminary Injunction [DE 65 at 1271–72] and will be referenced as "*EMW II*" in this opinion for consistency.

that could be obtained every 90 days that would relieve abortion clinics of certain requirements under Kentucky law. 978 F.3d 418, 440 (6th Cir. 2020).[17] The Sixth Circuit held that plaintiffs must prove (1) their facilities would close if the law would take effect and (2) they "attempted *in good faith*" to obtain waivers. *Id.*

As explained in the Court's Preliminary Injunction [DE 65], Plaintiffs presented proof that they would be unable to operate their business if they were forced to immediately comply with HB 3 in its entirety [DE 3-1 at 134] and they presented affidavits that demonstrated that they attempted to contact vendors and hospitals in a good-faith attempt to comply [DE 55 at 1044]. Also, the Cabinet has represented that it may not create any forms or promulgate any regulations required by HB 3. [DE 53 at 795]. And there is no indication that the Cabinet intends to create a waiver as it did in *EMW II.* [DE 53]. It is impossible for Plaintiffs to even attempt compliance with the vast majority of provisions because compliance would require forms, programs, regulatory guidance, or a waiver from the Cabinet. For example, it is logically inconsistent to assert Plaintiffs should attempt in good faith to comply with the Kentucky Abortion-Inducing Drug Certification Program under Section 15 since it has not been created.

The Plaintiffs also submitted the Abate Declaration detailing correspondence with the Attorney General where the Attorney General refused to forgo enforcement of HB 3 until the Cabinet created a means of compliance. [DE 22-1]. As there is no waiver provision in HB 3, counsel's attempt to get the Attorney General to agree to nonenforcement is a good-faith attempt

---

[17]*EMW II* involved KRS § 216B.0435, which requires abortion providers to have a written transfer agreement with a licensed acute-care hospital. *Id*. at 423. The Cabinet promulgated regulations implementing compliance with that statute, and those regulations authorized a 90-day waiver of the written agreement requirement. *Id*. at 424.  The ability to obtain a waiver depended in part upon "whether the facility has made 'a good faith effort to obtain a transfer or transport agreement.'" *Id*. citing 902 KAR 20:360 § 10(5)(b)(1)–(3). The statute and regulations at issue in *EMW II*, including the 90-day waiver, are not at issue in the present case and HB 3 does not provide an ability to seek a waiver.

to get some type of waiver where none exists in the language of the bill or Cabinet regulations. The ample evidence presented was enough for the Court to find that Plaintiffs would be unable to operate their businesses despite a good-faith attempt to comply.  [DE 65 at 1275]. The Attorney General's argument must fail because Plaintiffs have proven that they proactively attempted in good faith to comply with HB 3, but compliance remains impossible without forms and regulatory guidance from the Cabinet.

The Attorney General also argues that "[t]he Court failed to narrowly tailor the injunction." [DE 67 at 1297].  Yet this argument is contrary to the Court's Preliminary Injunction Order. [DE 65]. Unlike *Ayotte v. Planned Parenthood of N. New England*, the Court did not enjoin the entirety of HB 3 simply because some provisions were unconstitutional as enacted. 546 U.S. 320, 325 (2006). As the Attorney General noted, the parties did not dispute that compliance was possible with several sections.  [DE 63 at 1148–49].  So the Court did not enjoin provisions when the parties that compliance was possible. [DE 49 at 644–45]. In an effort to narrow the scope of its injunction, the Court painstakingly analyzed every section of HB 3. [*Id.* at 1260–70]. Based on the interplay between sections, the Court did not enjoin Section 7 because Plaintiffs could comply with it once Sections 8, 9, and 26 were enjoined.  [*Id.* 65 at 1264]. To further narrow the scope of its injunction, the Court enjoined four sections only to the extent that they may be enforced against Plaintiffs. [*Id.* 65 at 1290]. Enforcement provisions were only enjoined to the extent the Court also enjoined the underlying law. [*Id.*]. By narrowly tailoring its Preliminary Injunction in these ways, the Court followed the Supreme Court's mandate to "limit the solution to the problem" by "enjoin[ing] only the unconstitutional applications of a statute."  *Ayotte*, 546 U.S. at 329.

The Attorney General argues that "[t]he Court also failed to apply ordinary rules of statutory interpretation." [DE 67 at 1297]. He asserts that the Court failed to adopt an interpretation

consistent with the statute's presumption of constitutionality. [*Id.*]. Yet the Court followed doctrines of statutory interpretation required by the Kentucky Supreme Court and the Sixth Circuit. [DE 65 at 1258–59]. In Kentucky, "[t]he cardinal rule of statutory construction is that the intention of the legislature should be ascertained and given effect." *Wade v. Poma Glass & Specialty Windows, Inc.*, 394 S.W.3d 886, 888 (Ky. 2012). Courts must presume that when the Kentucky Legislature creates a requirement in the statute that it "meant exactly what it said, and said exactly what it meant." *Univ. of Louisville v. Rothstein*, 532 S.W.3d 644, 648 (Ky. 2017). Because Section 39 included an emergency clause, the Court must read the plain language of HB 3 as requiring immediate compliance regardless of whether the Cabinet has created forms or promulgated regulatory guidance. *See id.* The Attorney General cites no law to the contrary.

The Attorney General argues that this interpretation ignores HB 3's presumption of constitutionality. [DE 67 at 1297]. Yet under the Attorney General's interpretation, seemingly no law could ever be unconstitutional. Such an interpretation would require the Court to strip all operative meaning from HB 3. This would violate "the idea that 'every word and every provision is to be given effect [and that n]one should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence.'" *Nielsen v. Preap*, 139 S. Ct. 954, 969 (2019) (alteration in original) (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012)); *Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 257–58 (6th Cir. 2020). Although the Court began with a presumption that HB 3 was constitutional, it must not "give constitution-ally permissible meaning where none would otherwise exist." *Commonwealth v. Kash*, 967 S.W.2d 37, 44 (Ky. App. 1997) (quoting *Diemer v. Commonwealth, Transp. Cabinet, Dept. of Highways*, 786 S.W.2d 861, 863 (Ky. 1990)). Therefore, the Court's plain language interpretation was the correct and intended interpretation of HB 3.

Also, the Attorney General argues that "[t]he Court adopted a novel theory of procedural due process that is contrary to the law and would effectively prohibit States from exercising their legislative police power over even ordinary businesses." [DE 67 at 1298]. The Attorney General does not elaborate on this argument beyond the above-quoted single sentence. [*Id.*]. He does, however, cite *37712, Inc. v. Ohio Dept. of Liquor Control*, 113 F.3d 614, 619 (6th Cir. 1997), which involved a local option referendum that would strip local liquor retailers of their licenses to sell alcohol. Even so, the Sixth Circuit has held that "due process protects an interest in the continued operation of an existing business," which includes "a protected property interest in the continued operation of [an abortion] clinic." *Women's Med. Pro. Corp. v. Baird*, 438 F.3d 595, 611–12 (6th Cir. 2006). Without further elaboration, the Court must reject Attorney General Cameron's argument as contrary to Sixth Circuit precedent.

Finally, the Attorney General argues that "the Court purported to resolve incorrectly an important question about state budgeting laws that was not part of Plaintiffs' claims and was not briefed by the parties." [DE 67 at 1298]. The Court did not resolve any issues of state budgeting law in its Preliminary Injunction. It did not direct the Cabinet to do anything or relieve them of any obligations under Kentucky law. This argument presumably refers to a status report filed by the Cabinet revealing that it may not create forms and promulgate regulations because HB 3 was an unfunded mandate. [DE 53 at 794]. This status report was filed on May 5, 2022. [*Id.*]. Plaintiffs' findings of fact and conclusions of law were due on May 6 and Attorney General Cameron's findings of fact and conclusions of law were due on May 12. [DE 48]. As the Court noted in the Preliminary Injunction this issue goes solely to the possible length of the preliminary injunction.

The Attorney General does not explain how this issue was resolved incorrectly, only that it was not part of Plaintiffs' claims and not briefed by the parties. [DE 67 at 1298]. Despite the

short notice, Plaintiffs address the Cabinet's status report as it relates to roughly a dozen separate sections of HB 3. [DE 54 at 810 (Section 1), 818 (Sections 4 and 13), 824 (Sections 8 and 13), 828 (Sections 9, 13, and 26), 834 (Sections 13 and 26), 836 (Sections 13 and 27), 839 FN 4 (Sections 28 and 29), 854–55 (Sections 20, 21, and 22)]. In response, the Attorney General gave the Court a single footnote: "Whether any other entity—including the Cabinet—can comply with HB 3's requirements is not before the Court." [DE 63 at 1148]. "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson*, 125 F.3d at 995–96 (quoting *Citizens Awareness Network, Inc,* 59 F.3d at 293–94). Based on the law and information presented by the Cabinet but unaddressed by the Attorney General, the Court found that its Preliminary Injunction should be in place until the Cabinet creates forms and promulgates regulations necessary for compliance.   [DE 65 at 1282]. Entering a preliminary injunction for 60 days would have been futile because the Cabinet represented that it would not create a means for compliance within 60 days. The Court finds no merit in the Attorney General's assertions because he failed to make these arguments in response to Plaintiffs' findings of fact and conclusions of law and because they do not accurately reflect the Court's findings.

### b.  Irreparable Harm

The Attorney General must prove that the Commonwealth will be irreparably harmed if the Court does not issue a stay pending appeal. *Crookston*, 841 F.3d at 398. To evaluate any harm, the Court will examine "(1) the substantiality of the injury alleged, (2) the likelihood of its occurrence, and (3) the adequacy of the proof provided." *Ohio ex rel. Celebrezze,* 812 F.2d at 290. As the movant, it is the Attorney General's burden to prove that the Commonwealth will suffer irreparable harm absent a stay. *DV Diamond Club of Flint, LLC*, 960 F.3d at 746.

The Attorney General cites *Thompson v. DeWine*, 976 F.3d 610, 619 (6th Cir. 2020) for the proposition that "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." [DE 67 at 1296]. *Thompson*, however, is distinguishable because the very next sentence after the Attorney General's quote includes qualifying language: "So [u]nless the statute is unconstitutional, enjoining a 'State from conducting [its] elections pursuant to a statute enacted by the Legislature . . . would seriously and irreparably harm [the State].'" *Id.* (quoting *Thompson v. DeWine*, 959 F.3d 804, 812 (6th Cir. 2020) (alterations in original)). Therefore, a state only suffers an irreparable injury when the Court enjoins a law that does not violate the Constitution. *See id.* The Attorney General offers no affidavits or additional evidence of any irreparable harm other than this single assertion of law.

The Court has held that multiple provisions of HB 3 are unconstitutional. [DE 65 at 1272, 1288]. The case law recognizes a constitutionally protected right to a pre-viability abortion under the Fourteenth Amendment. *See Planned Parenthood of Pennsylvania v. Casey*, 505 U.S. 833, 846 (1992); *June Med. Servs. L.L.C. v. Russo*, 140 S. Ct. 2103, 2135 (2020) ("*Casey* reaffirmed the most central principle of *Roe v. Wade*, a woman's right to terminate her pregnancy before viability."). Because Plaintiffs cannot comply with certain provisions of HB 3 and thus cannot legally perform abortion services, their patients face a substantial obstacle to exercising their rights to a pre-viability abortion. *EMW II*, 978 F.3d at 433–34. As the Court's Preliminary Injunction explains in more detail [DE 1286–88], HB 3's 15-week ban also places an undue burden on Plaintiffs' patients' right to a pre-viability abortion. *EMW II*, 978 F.3d at 433–34. Provisions of HB 3 that place an undue burden on women seeking an abortion of a nonviable fetus violate substantive due process rights under the Fourteenth Amendment. *See Casey*, 505 U.S. 833, 846

(1992). Because these provisions are unconstitutional, the Commonwealth can suffer no harm from the Court's Order enjoining their enforcement against Plaintiffs. *See Thompson*, 976 F.3d at 619.

As explained above, the Commonwealth suffers no irreparable harm due to the Court's order enjoining unconstitutional provisions of HB 3. However, the harm suffered by Plaintiffs if the Court were to stay its Preliminary Injunction would be severe. The Court held that provisions of HB 3, as currently enacted, likely violate substantive due process. [DE 1272, 1288]. The Sixth Circuit has held that "if it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated." *Am. Civil Liberties Union of Ky. v. McCreary Cty.*, 354 F.3d 438, 445 (6th Cir. 2003), *aff'd sub nom. McCreary Cty., Ky. v. Am. C.L. Union of Ky.*, 545 U.S. 844 (2005) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). The Court is not enjoining HB 3 in its entirety, only the provisions that are unconstitutional as enacted. [DE 65 at 1189–90]. The Attorney General has conceded that enjoining provisions that require Plaintiffs to submit forms created by the Cabinet is harmless because they impose no obligation. [DE 63 at 1150]. Compared to Plaintiffs' potential deprivation of a constitutional right, Plaintiffs will suffer far greater irreparable harm if the Court stays its Preliminary Injunction pending appeal. *See McCreary Cty.*, 354 F.3d at 445. Therefore, the Attorney General has failed to carry his burden to prove the Commonwealth will suffer irreparable harm absent a stay.

### c. **Harm to the Public**

Finally, the Court addresses the prospect that others will be harmed by the stay and the public interest in the stay. As noted, these two factors are merged where the state is the moving party. *SawariMedia*, 963 F.3d at 596. "When constitutional rights are threatened or impaired, irreparable injury is presumed." *Obama for Am. v. Husted,* 697 F.3d 423, 436 (6th Cir. 2012). And no cognizable harm results from stopping unconstitutional conduct, so "it is always in the public

interest to prevent violation of a party's constitutional rights." *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 274 F.3d 377, 400 (6th Cir. 2001) (citation omitted).  For the reasons above and stated in the Court's Preliminary Injunction [DE 65], constitutional rights would be impaired absent the Court's Preliminary Injunction, thus there is no harm to the public in denying the Attorney General's motion.

## IV.   CONCLUSION

The standard for a stay of an injunction pending appeal requires the Court to re-engage in the analysis that it recently undertook granting the Preliminary Injunction, even though the Attorney General has not cited a change in law or facts relevant to the Court's previous analysis. This Court found that the Plaintiffs demonstrated a likelihood of success on the merits and threat of irreparable harm sufficient to entitle them to a preliminary injunction. [DE 65]. For the reasons stated above, the Attorney General fails to show that he is entitled to a stay. **IT IS ORDERED** that the Attorney General's Emergency Motion for Stay Pending Appeal [DE 67] is **DENIED**.

Rebecca Grady Jennings, District Judge
United States District Court

May 26, 2022